No. 107,751

In the Matter of DAVID K. LINK, *Respondent*.

(279 P.3d 720)

*Opinion filed July 6, 2012.*

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Laura B. Shaneyfelt*, of Shaneyfelt Law, of Wichita, argued the cause, and *David K. Link*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, David K. Link, of Wichita, an attorney admitted to the practice of law in Kansas in 1999.

On January 3, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on January 25, 2011. On February 24, 2011, the respondent filed a proposed plan of probation. A hearing based on stipulated facts was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on December 6, 2011, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence); 1.4(a) (2011 Kan. Ct. R. Annot. 452) (communication); and 8.4(c) (2011 Kan. Ct. R. Annot. 618) (engaging in conduct involving misrepresentation and reflecting on lawyer's fitness to practice law).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

"11.   The written stipulation included the following:

'Comes now the Respondent, David K. Link, with counsel, Laura B. Shaneyfelt and the Disciplinary Administrator's office by Kate F. Baird, Deputy Disciplinary Administrator and jointly offer the following as true and material statements of fact.

'1.   David K. Link (hereinafter "the Respondent") is an attorney licensed in the state of Kansas, Attorney Registration No. 19213. . . . The Respondent was admitted to the practice of law in Kansas on September 27, 1999.

'2.   From 2003 through the present, the Respondent's law practice has included providing legal counsel to individuals seeking immigration benefits or involved in immigration removal proceedings.

'3.   Three separate disciplinary complaints were docketed between March and November of 2009 against the Respondent. Each of the complaints was filed by, or on behalf of, a client of the Respondent who had been seeking immigration benefits or involved in immigration removal proceedings.

'DA10,738 Complaint of [E.T.]

'4.   [E.T.] was in immigration removal proceedings in 2005. On September 14, 2005, the Respondent represented [E.T.] at a bond hearing where an Immigration Judge (IJ) in Kansas City, Missouri granted a $10,000.00 bond. [E.T.] was released from custody pending further hearing. [E.T.] returned to his home in Atlanta, Georgia.

'5.   A Master Hearing was set by the Court for July 18, 2006. The Respondent was retained by [E.T.] to represent him in seeking relief from deportation from the IJ.

'6.   The Respondent appeared with his client at the July 18, 2006 Master Hearing. At the hearing, the Immigration Judge accepted [E.T.'s] stipulation that he was deportable. The Court preliminarily acknowledged that [E.T.] was eligible to seek discretionary relief from deportation. A hearing on the merits of his request to seek relief from removal was set for October 19, 2007. The Court directed that [E.T.'s] application for relief be filed on or before September 18, 2006.

'7.   In 2005, Federal regulations required the submission of biometrics prior to consideration of certain applications for relief from deportation. At the July 18, 2006, hearing the Court orally directed that the requisite biometrics be provided by [E.T.] no later than 60 days prior to the scheduled hearing date of October 19, 2007.

'8.   [E.T.] tried to contact the respondent by phone after the July 18, 2006, hearing regarding his efforts. In his complaint, he alleged that the respondent did not return his calls. The Respondent admits that he did not return every phone call received from [E.T.]. [E.T.] had returned to Georgia after the July, 2006 hearing. Respondent reports that the move made communication more difficult.

'9.   The Respondent did not file [E.T.'s] application for cancellation of the removal order before the September 18, 2006 deadline.

'10.  The Respondent did not file a request for an extension of time within which [E.T.'s] application for cancellation of removal could be filed.

'11.  The biometrics in support of [E.T.'s] application was ordered to have been supplied no later than August 19, 2007. Respondent did not submit the paperwork necessary to obtain an appointment to secure his client's fingerprints until September 22, 2007. Notice was sent by the Service to [E.T.] on October 5, 2007, with a copy to the Respondent. The notice to [E.T.] was returned to the Service as undeliverable. Biometrics were not obtained within the time period proscribed by the Court.

'12.  [E.T.'s] fingerprints were obtained on October 18, 2007, one day before the scheduled hearing on [E.T.'s] application for relief.

'13.  The Respondent filed [E.T.'s] application for relief from deportation on October 19, 2007, the day of the scheduled hearing.

'14.  At the October 19, 2007, hearing on [E.T.'s] application for relief, the Immigration Court procedurally defaulted the application after ruling that it had been abandoned. The court determined that the required fingerprints had not been provided as directed and that the application was not timely filed. The relief was denied.

'15.  Respondent advised his client to pursue an appeal to the Board of Immigration Appeals (BIA). Respondent related that the IJ may have abused his discretion in pre-terminating his client's application based on the procedural default. Respondent's experience suggested that the immigration courts did not always strictly adhere to the imposed procedural deadlines by imposing default.

'16.  The Respondent represented [E.T.] in an unsuccessful appeal to the Board of Immigration Appeals.

'17.  After the BIA dismissal of [E.T.'s] appeal, the Respondent referred his client to another attorney for the purpose of pursuing relief based upon ineffective assistance of counsel. Respondent reports that he knew the referral would result in the filing of a disciplinary complaint.

'18.  [E.T.] filed a disciplinary complaint on March 2, 2009, against the Respondent. The Respondent admits that his conduct in representing [E.T.] was in violation of KRPC 1.3 (Diligence) and KRPC 1.4 (Communication).

'DA10,935 Complaint of [A.A.]

'19.  In September, 2007, [A.A. and J.M.] retained the Respondent to assist them in their efforts to obtain lawful residency for [J.M.]. They delivered $1,885.00 to the Respondent. The Respondent's fee was $1,500.00. The balance was provided to satisfy the $385.00 filing fee.

'20.  Respondent discussed with the couple the merits of the alternatives available to them as they sought lawful residency for [J.M.], as well as the difficulties presented with each. [A.A.] was a U.S. citizen. One of the alternatives discussed was a marriage-based application for permanent residence

by [J.M.], to be based upon Visa Petition for Alien Relative with U.S. Citizenship and Immigration Services.

'21. The Respondent recommended that [A.A.] file the visa petition based on a common law marriage. The Respondent discussed with them the need to secure certain documents in support of the effort.

'22. After September, 2007, [A.A.] would regularly call the Respondent's office to inquire about the progress of the matter. When she called, the complainant would be referred to a legal assistant of the Respondent. In February, 2008, the complainant was informed that the assistant was no longer with the office. At or near the same time, [A.A.] was advised that the couple needed to provide the Respondent with a copy of [J.M.'s] previous divorce decree and that they needed to come to the office to complete or sign additional paperwork. The couple complied with the direction and proceeded to the Respondent's office.

'23. Respondent had accumulated all of the documents that he had requested by May, 2008.

'24. Respondent admits that the [A.A./J.M.] client file languished from May, 2008 into 2009. During this period of time, the Respondent learned that [J.M.] left the country, despite Respondent's legal advice to the contrary.

'25. [A.A.] telephoned the Respondent in the months following May, 2008. The Respondent did not always return her telephone calls. [A.A.] undertook efforts to investigate the status of [J.M.'s] petition on her own. She learned that she would need to provide an access code associated with [J.M.'s] petition to gain information about the petition from a government website. [A.A.] called the Respondent over a period of three weeks in an effort to get the code number that had been assigned to the petition. Her calls were not immediately returned.

'26. [A.A.] was finally able to reach the Respondent by phone; she understood from him that the petition had been filed. She asked him for the number associated with [J.M.'s] petition and he provided her with a receipt number. At the time the Respondent provided [A.A.] with the number, the Respondent had not filed the petition. [A.A.] learned from U.S. Immigration and Citizenship Services that the number that she was relying on to gain information was unrelated to a petition filed on behalf of [J.M.].

'27. Respondent admits that the petition had not been filed when he provided [A.A.] with the receipt number. The number provided to [A.A.] by the Respondent was associated with another client's immigration matter.

'28. No Visa Petition was ever filed by the respondent on behalf of [J.M.].

'29. [A.A.] filed a disciplinary complaint on October 27, 2009, against the Respondent. Respondent admits that his conduct in the [A.A./J.M.] matter violates KRPC 1.3 (Diligence); KRPC 1.4 (Communication); and KRPC 8.4(c) (Misconduct).

'DA10,937 Complaint of [M.R.]

'30. In January, 2007, the Respondent was retained to assist three mem-

bers of the [M.R.] family as they faced immigration removal proceedings. The family had applied for asylum about ten years prior to consulting the Respondent. Their claims were denied by the USCS Asylum office and their cases referred to immigration for removal proceedings. Respondent was paid a $5,000.00 retainer.

'31. The Respondent appeared with the [M.R.] family at a February 26, 2007, Master Hearing in the Immigration Court. The Court set a March 3, 2008, date to further consider their request for relief from removal.

'32. At the February, 2007, hearing, the Court orally imposed a deadline of February 20, 2008, for the [M.R.] family to submit their application for relief. The court directed that all supporting documentation be submitted with the application. The family was directed to be fingerprinted at the Application Service Center before the next court date.

'33. The Respondent did not file an application for relief on behalf of the [M.R. family] before the February 20, 2008, deadline. The application was filed on February 21, 2008.

'34. Communication between the Respondent and his clients proved difficult. One of the children was relied upon to translate conversations between the Respondent and the [M.R.] parents.

'35. The Respondent did not complete the paperwork necessary for his clients to be fingerprinted before the March 3, 2008, hearing. In his response to the [M.R.] complaint, the Respondent admits that he regretted that the fingerprinting had not been accomplished before the Hearing but denies that the fact impacted his clients' position.

'36. On March 3, 2008, the Court denied the relief sought by the [M.R. family], finding that the application had been abandoned. The Court granted the [M.R. family] until April 2, 2008 to appeal the decision. No appeal was taken by the Respondent. Respondent believed that his client's chances at success were optimized by pursuing temporary protected status.

'37. Respondent reports that he discussed the merits of appeal with his clients and consulted with the [M.R. family] regarding their alternatives. The Respondent filed applications for Temporary Protected Status on behalf of the [M.R.] family. On May 19, 2008, the Respondent provided the [M.R. family] with copies of the applications for Temporary Protected Status that had been filed. As of September, 2010, the family remained in the United States on temporary protected status.

'38. [M.R.] filed a disciplinary complaint on November 9, 2009, against the Respondent. Respondent admits that his conduct in the [M.R.] matter violated KRPC 1.3 (Diligence).'

"12. At the hearing on the formal complaint, the Respondent testified about how he implemented his proposed plan of probation. Additionally, the Respondent's proposed practice supervisor also testified about the implementation of the Respondent's proposed plan of probation.

## "CONCLUSIONS OF LAW

"13.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.4, and KRPC 8.4(c), as detailed below.

"14.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his clients in this case. The Respondent failed to provide diligent representation to [E.T.] when he failed to timely file [E.T.'s] application for relief and when he failed to assist [E.T.] with timely providing his fingerprints. The Respondent failed to provide diligent representation to [A.A.] and [J.M.] when he failed to file [J.M.'s] petition for permanent residence or take any other action on behalf of [J.M.] from May, 2008, forward. Finally, the Respondent failed to diligently represent the [M.R. family] when he failed to timely file their application for relief and when he failed to assist the [M.R. family] with timely providing their fingerprints. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.3.

"15.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return calls to [E.T.], [A.A.], and [J.M.]. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"16.   'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he told [A.A.] that he had filed a petition on behalf of [J.M.] and when he provided [A.A.] with a false access code number. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"17.   In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"18.   *Duty Violated.* The Respondent violated his duty to his clients to provide diligent representation and adequate communication. Additionally, the Respondent violated his duty to the public and to the legal profession to maintain his personal integrity.

"19.   *Mental State.* The Respondent knowingly violated his duties.

"20.   *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients.

"21. *Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"22. *Dishonest or Selfish Motive*. The Respondent provided false information to [A.A.]. As such, the Hearing Panel concludes that this misconduct was motivated by dishonesty.

"23. *A Pattern of Misconduct*. Three separate immigration clients filed complaints against the Respondent. Each of the three complaints included a complaint regarding the Respondent's lack of diligence. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"24. *Multiple Offenses*. The Respondent violated KRPC 1.3, KRPC 1.4, and KRPC 8.4(c). Thus, the Respondent committed multiple offenses.

"25. *Vulnerability of Victim*. Based upon the immigration difficulties facing the Respondent's clients, the Hearing Panel concludes that [E.T.], [A.A.], [J.M.], and the [M.R.] family were vulnerable to the Respondent's misconduct.

"26. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to the practice of law in 1999. Additionally, the Respondent previously practiced law in Guam. The Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"27. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"28. *Absence of a Prior Disciplinary Record*. The Respondent has not previously been disciplined. The Respondent's disciplinary record is a mitigating factor.

"29. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The Respondent suffers from depression. Further, it appears to the Hearing Panel that the Respondent's depression contributed to his misconduct.

"30. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The Respondent entered into an extensive stipulation in this case. In the stipulation, the Respondent admitted to many of the facts alleged in the formal complaint. Additionally, the Respondent stipulated that he violated KRPC 1.3, KRPC 1.4, and KRPC 8.4(c).

"31. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The Respondent is an active and productive member of the bar in Wichita, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"32. *Remorse*. At the formal hearing, the Respondent expressed genuine remorse and shame for violating the Kansas Rules of Professional Conduct.

"33. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"34. The Deputy Disciplinary Administrator recommended that the Hearing Panel recommend that the Respondent be suspended for a period of six months. Additionally, the Deputy Disciplinary Administrator recommended that the imposition of the suspension be suspended and that the Respondent be placed on probation for a period of 18 months. Alternatively, the Deputy Disciplinary Administrator argued that should the proposed plan of probation not be accepted by the Hearing Panel or the Court and the Respondent is suspended from the practice of law, that the Respondent undergo a reinstatement hearing at the conclusion of the period of suspension, pursuant to Kan. Sup. Ct. R. 219.

"35. Counsel for the Respondent recommended that the Respondent's proposed plan of probation be adopted and that the Respondent be allowed to continue to practice law.

"36. Kan. Sup. Ct. R. 211(g) provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

   (i)   the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

   (ii)  the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

   (iii) the misconduct can be corrected by probation; and

   (iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"37.   In this case, the Respondent developed a workable, substantial, and detailed plan of probation. The Respondent provided a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel months in advance of the hearing on the formal complaint. Further, the Respondent put the proposed plan of probation into effect prior to the formal hearing by complying with each of the terms and conditions of the probation plan. The misconduct committed by the Respondent in this case can be corrected by probation. Finally, placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. Accordingly, it is appropriate for the Hearing Panel to consider probation in this case.

"38.   Despite the conclusion that the Respondent violated KRPC 8.4(c) (misconduct), the Hearing Panel was struck by the Respondent's integrity as observed by the Hearing Panel during the hearing on the formal complaint. And, as a result, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of six months. The Hearing Panel further recommends that the imposition of the suspension be suspended and that the Respondent be placed on probation for a period of 18 months, subject to the following terms and conditions:

   '1.   *Inventory of Cases and Clients.* The Respondent shall maintain an inventory of all open cases and clients. The Respondent shall update the inventory on a daily basis. The inventory shall include the client's name, the client's contact information, the client's immigration-related goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

   '2.   *Client Communication.* The Respondent shall contact each client by letter at least once every three months regarding the status of the matter.

   '3.   *Nature of Cases.* The Respondent shall not accept cases that have a low probability of success and are without a clearly established means of attempting to reach the client's goal.

   '4.   *Development of New Communication Tools.* The Respondent shall develop and implement a new written communication tool to be provided to new clients at the outset of a new engagement, that will assist them in understanding the reasonable timetable of the case; any target dates for completion of specific

legal tasks; and all procedural and filing deadlines. If an anticipated deadline or filing date as set out in the initial written communication to a new client cannot be met, the Respondent shall notify the client by letter of the reason and the new time frame for completion.

'5. *Practice Supervision.* David Hiebert shall serve as the Respondent's practice supervisor. The Respondent shall provide Mr. Hiebert with an updated copy of the inventory of cases and clients on a monthly basis. The Respondent shall allow Mr. Hiebert access to his client files, calendar, and trust account records. The Respondent shall comply with any requests made by Mr. Hiebert. Mr. Hiebert shall prepare a quarterly report to the Disciplinary Administrator regarding the Respondent's status on probation. Mr. Hiebert will be acting as an officer and an agent of the court while supervising the probation and monitoring the Respondent's legal practice. As supervising attorney, Mr. Hiebert shall be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities.

'6. *Client Billing.* The Respondent shall implement and maintain a system to track all time spent on each case. The system shall allow the Respondent to determine the amount of unearned fees to be refunded in the event the Respondent's representation is terminated prior to the completion of the representation. The Respondent shall discuss the implementation of the system with Mr. Hiebert and adopt recommendations made by Mr. Hiebert in tracking his time.

'7. *Restitution.* The Respondent shall refund $1,885 to [A.A.] within 30 days of the date of this report. The Respondent shall work with the [M.R] family in an attempt to reach an agreement as to restitution. The Respondent shall pay the agreed amount of restitution within 30 days of the agreement. In the event they are unable to reach an agreement, the Respondent shall fully cooperate with the Wichita fee dispute committee in resolving the matter.

'8. *Office Assistance.* The Respondent shall continue to employ a legal assistant.

'9. *Office Procedures.* Within ten days of this report, the Respondent shall provide Mr. Hiebert and the Disciplinary Administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The Respondent shall modify that procedure if directed to do so by Mr. Hiebert or the Disciplinary Administrator. The Respondent shall follow the written office procedures.

'10. *Audits.* Within thirty (30) days of the date of this report, Mr. Hiebert shall conduct an initial audit of the Respondent's files. Thereafter, every six months, Mr. Hiebert shall conduct additional audits. If Mr. Hiebert discovers any violations of the Kansas Rules of Professional Conduct, Mr. Hiebert shall include such information in his report. Mr. Hiebert shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report.

The Respondent shall follow all recommendations and correct all deficiencies noted in Mr. Hiebert's periodic audit reports.

'11. *Psychological Treatment*. The Respondent shall continue his treatment for depression throughout the period of supervised probation, unless the counselor determines that continued treatment is no longer necessary. The counselor shall notify Mr. Hiebert and the Disciplinary Administrator in the event that the Respondent discontinues treatment against the recommendation of the counselor during the probationary period. The Respondent shall provide the counselor with an appropriate release of information to allow the counselor to provide such information to Mr. Hiebert and the Disciplinary Administrator.

'12. *Continued Cooperation*. The Respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information.

'13. *Professional Liability Insurance*. The Respondent shall continue to maintain professional liability insurance.

'14. *Additional Violations*. The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked.'

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hear-

ing before the panel and the hearing before this court. The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352). We conclude the hearing panel's findings are supported by clear and convincing evidence and that the hearing panel's conclusions of law regarding aggravating and mitigating factors are supported by the facts. Thus, the only issue before us is the appropriate discipline.

At the hearing before this court, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 6 months, that the imposition of the suspension be suspended, and that the respondent be placed on probation for a period of 18 months; some changes to the probation plan proposed by the respondent and adopted by the hearing panel were requested, however. The respondent requested that the hearing panel adopt the probation plan as he filed it with the office of the Disciplinary Administrator, which he has implemented.

The hearing panel unanimously recommended that the respondent be suspended from the practice of law for a period of 6 months, that the imposition of the suspension be suspended, and that the respondent be placed on probation for a period of 18 months, subject to specified terms and conditions. The court accepts the hearing panel's recommendation of probation with the modification to the probation plan requested by the office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that David K. Link be suspended from the practice of law for a period of 6 months in accordance with Supreme Court Rule 203 (2011 Kan. Ct. R. Annot. 280). His suspension is stayed, and he is placed on probation for 18 months on the following terms and conditions:

1. *Inventory of Cases and Clients.* The respondent shall maintain an inventory of all open cases and clients. The respondent shall update the inventory on a daily basis. The inventory shall include the client's name, the client's contact information, the client's immigration-related goal, the tasks that remain to be completed, all

pending deadlines, and the forum (if any) in which the matter is pending.

2. *Client Communication.* The respondent shall contact each client by letter at least once every 3 months regarding the status of the matter.

3. *Nature of Cases.* The respondent shall not accept cases that have a low probability of success and are without a clearly established means of attempting to reach the client's goal.

4. *Development of New Communication Tools.* The respondent shall develop and implement a new written communication tool to be provided to a new client at the outset of a new engagement. The tool should assist the client in understanding the reasonable timetable of the case, any target dates for completion of specific legal tasks, and all procedural and filing deadlines. If an anticipated deadline or filing date as set out in the initial written communication to a new client cannot be met, the respondent shall notify the client by letter of the reason and the new time frame for completion.

5. *Practice Supervision.* David Hiebert shall serve as the respondent's practice supervisor. The respondent shall provide Mr. Hiebert with an updated copy of the inventory of cases and clients on a monthly basis. The respondent shall allow Mr. Hiebert access to his client files, calendar, and trust account records. The respondent shall comply with any requests made by Mr. Hiebert. Mr. Hiebert shall prepare a monthly report regarding the respondent's status on probation and provide the report to the Disciplinary Administrator during the first 6 months of the respondent's probation and shall prepare and provide the Disciplinary Administrator with a quarterly report for the remaining year of respondent's probation. Mr. Hiebert will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, Mr. Hiebert shall be afforded all immunities granted by Supreme Court Rule 223 (2011 Kan. Ct. R. Annot. 395) during the course of his supervising activities.

6. *Client Billing.* The respondent shall implement and maintain a system to track all time spent on each case. The system shall

allow the respondent to determine the amount of unearned fees to be refunded in the event the respondent's representation is terminated prior to the completion of the representation. The respondent shall discuss the implementation of the system with Mr. Hiebert and adopt recommendations made by Mr. Hiebert in tracking his time.

7. *Restitution.* The respondent reports he has refunded $1,885 to A.A. If that has not been done, respondent shall accomplish this task within 30 days of the filing of this opinion. The respondent shall continue to attempt to reach an agreement with the M.R. family regarding restitution. The respondent shall pay the agreed amount of restitution within 30 days of the agreement. In the event they are unable to reach an agreement, the respondent shall fully cooperate with the Wichita fee dispute committee in resolving the matter.

8. *Office Assistance.* The respondent shall continue to employ a legal assistant.

9. *Office Procedures.* The respondent has provided Mr. Hiebert and the Disciplinary Administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The respondent shall modify that procedure if directed to do so by Mr. Hiebert or the Disciplinary Administrator. The respondent shall follow the written office procedures.

10. *Audits.* Mr. Hiebert has conducted an initial audit of the respondent's files. Beginning 6 months after the first audit and continuing every 6 months, Mr. Hiebert shall conduct additional audits. If Mr. Hiebert discovers any violations of the KRPC, Mr. Hiebert shall include such information in his report. Mr. Hiebert shall provide the Disciplinary Administrator and the respondent with a copy of each audit report. The respondent shall follow all recommendations and correct all deficiencies noted in Mr. Hiebert's periodic audit reports.

11. *Psychological Treatment.* The respondent shall continue his treatment for depression throughout the period of supervised probation, unless the counselor determines that continued treatment is no longer necessary. The counselor shall notify Mr. Hiebert

and the Disciplinary Administrator in the event that the respondent discontinues treatment against the recommendation of the counselor during the probationary period. The respondent shall provide the counselor with an appropriate release of information to allow the counselor to provide such information to Mr. Hiebert and the Disciplinary Administrator.

12. *Continued Cooperation.* The respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the respondent shall timely provide such information.

13. *Professional Liability Insurance.* The respondent shall continue to maintain professional liability insurance.

14. *Additional Violations.* The respondent shall not violate the terms of his probation or the provisions of the KRPC. In the event that the respondent violates any of the terms of probation or any of the provisions of the KRPC at any time during the probationary period, the respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the respondent to show cause why the probation should not be revoked.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BEIER, J., not participating.
REBECCA W. CROTTY, District Judge, assigned.